Good morning. My name is Mark Roth. Our THA represents defendants, appellants. My name is Jeannie Evans, representing the City of Chicago. My name is Gary Tom, I'm an attorney and also the plaintiff in the case. Alright, you'll have 15 minutes per side and save your time for rebuttal if you wish to have any rebuttal. Oh, I'm sorry. Do you want time for rebuttal? I do, and I don't think it's going to take 15 minutes for the first one. And the city? The city just wanted to point out that as an intervener appellee, we're sharing time with Mr. Palm, and we've agreed to split 10 minutes for us and 5 minutes for you. Alright. Alright, we'll be somewhat liberal. I won't let him just limit things the way he wants to. Alright, proceed. Thank you. There's really, there's four issues here, and one issue that I really want to address right off the bat is the preemption issue, and that is whether the City of Chicago Condominium Ordinance is inconsistent with and less restrictive than the Condo Act and the Not-for-Profit Act. You say less restrictive. Correct, that's correct, and I think that that's an important point. The City of Chicago has a Condominium Ordinance, and it says if you want financial books and records and you're a unit owner, you can submit a request, and within three business days, you're entitled to all of the financial books and records of the association. The Illinois Condo Act is different. It says that if you want financial books and records, you submit a request, and you have to state a proper purpose for the request, and you can only get up to 10 years' worth of the condominium association's financial books and records, and the association has 30 days to give those to you. The Not-for-Profit Corporation Act also says if, and this is a not-for-profit corporation, as most condominium associations are, it says if you want the financial books and records, you have to send a request and state a proper purpose. So the question is, which we've obviously briefed below, is the fact that there are inconsistencies, does the state act, whether it's the Condo Act or the Not-for-Profit Act, preempt the City of Chicago Condominium Ordinance? And we believe it does. The cases that we've seen, and I want to take a look at the case that the plaintiff and the city cite, is really the Illinois Supreme Court decision in Skadron versus City of Des Plaines. So that seems to be what they're basing their argument on. But actually, from our perspective, we really like that case, and we think it actually supports our position. Skadron cites a lot of different cases, but the essence of what the Illinois Constitution says is that a home rule municipality can enact a municipal ordinance that is concurrent with a state act. So concurrent means in conjunction with. And you take a look at the Skadron case. Skadron cited a First District Appellate Court decision called Universal Outdoor versus Village of Elk Grove. And in that case, which the Skadron Court agreed with, it says, if there is no express statement about preempting home rule authority in a statute, a state statute, then a home rule municipality may enact more restrictive regulations. And every single case cited. Do you have any language here in the state statute that says that the home rule unit cannot enact ordinances that are inconsistent? There is no such language, Judge. Isn't that what the Skadron case says? Well, Skadron says that if they're more restrictive, you can certainly enact, home rules can certainly enact statutes that are different than the ordinances that are different than the state statute. Because Skadron, for example, Skadron, in that case, there was a sign ordinance related to billboards. And the state act said you can't have a billboard that's bigger than 1,200 square feet. The city of Des Plaines enacts an ordinance that says you can't have a billboard that's greater than 480 square feet. And the Illinois Supreme Court said that was fine because it's a more restrictive regulation. Well, what's the difference between less restrictive and more? My gut would be if it's less restrictive, it is not imposing at all on the state statute. Well, that's correct. And actually the Seventh Circuit noted that, that if it's less restrictive, then you could never apply, actually apply the municipal ordinance. But then you're arguing that it's affecting or that it's an improper home rule ordinance because it's less restrictive is what I thought you said. I am. And that's how the problem here is that the trial court found that it was applicable and required documents to be produced in conjunction with the condo, the ordinance of the city. But how is it not concurrent if the language basically offers the same results? It doesn't, though. It doesn't at all. Here's the problem. There's a restriction. If you look at the Condo Act, the State Act, it says, for example, if you want meeting minutes, you just send us a request. We'll give you meeting minutes. But we're going to put restrictions on when financial books and records are owed to a unit owner. And one restriction is you can only ask for 10 years' worth of documents. And a second restriction is you have to state a proper purpose. More than one of them says you have to state a purpose. Yes, absolutely. But I mean, just for the purposes of this discussion, because the city ordinance only really deals with financial books and records. So the restriction that the state put on it is you have to state a proper purpose. For example, that's one restriction. Then the city comes along and says, well, you don't have to state a proper purpose. We'll give them to you no matter what. But they did state a purpose there, didn't they not? No, they did not. As a matter of fact, the motion for summary judgment as to whether he stated a proper purpose was denied because there was a question, and the order reflects that, that there was an issue as to whether Mr. Palm stated a proper purpose under the Illinois Condominium Property Act. And for that reason, the motion for partial summary judgment was denied. So in this case, there's never been any finding that he did state a proper purpose. And, in fact, he didn't state a proper purpose. He didn't state any purpose. Well, doesn't Skadron also say that home rule ordinances, merely because they're inconsistent in some way with statute, does not in and of itself invalidate the ordinance? It absolutely says that in dicta. But if you take a look at the Skadron holding itself, in every single case cited in Skadron, and every single case cited by the city of Chicago, talks about more restrictive. For example, I'm just going to read the cases that the city cites. But you're reading something into Skadron that isn't there. Well, I don't believe I am because Skadron based its decision on all these prior appellate court opinions and ultimately came to the conclusion that the signed ordinance in that case was a valid home rule authority because it was more restrictive. And if you take a look at the cases cited by the city, for example, the Illinois Supreme Court case, the city of Chicago versus Roman, according to the very city, they say that the Illinois criminal code and unified code of corrections did not preempt home rule authority prescribing more stringent minimum prison sentences. The Illinois Supreme Court decision, they say that. But that's what I keep going back to. All the cases talk about more restrictive. In other words, they're saying you're home free if you're less restrictive. Actually, they're saying you're home free if you're more restrictive. No, I'm saying they're saying in spite of you're free if you're less restrictive because you have not affected the state statute or limited it. In this case, they have not limited a state statute. Well, they have eviscerated the state statute, actually, because the state statute says you have to provide a proper purpose. And now the city of Chicago is saying forget about providing a proper purpose. But how do you get around the Constitution and the Article 6A state laws that regulate the same subject matter do not preempt ordinances enacted by home rule municipalities unless the statute contains such a specific statement of preemption? And there is none here. No, I agree that there's no specific statement. However, how the cases interpret that is that, again, it needs to be more restrictive. And that's the universal outdoor versus village of Oak Grove case. Taking Oak Brook Terrace, let's go through what they do. They take a three-part test. The first issue is, is it a valid home rule ordinance? You're saying it is not. I'm saying that the language of the ordinance is not a valid home rule ordinance. That's correct. And you base that on it being less restrictive. Correct. Is that your only basis? That is, I think, that is the only basis because that is the answer to the question. Go ahead. Couldn't it be argued, depending on your perspective, that the city ordinance is more restrictive than the state? In other words, we're going to give you three days to produce these records, and you don't even have to provide a reason. Wouldn't that be seen as more restrictive than the state, which is liberal from the vantage point of the condo? You've got 30 days, and you've got to make them say certain words. It's like whose ox is getting gored. Well, that's somewhat true. But I think if you take a look at what the state is trying to restrict, because the state on the one hand – Are they trying to restrict records from homeowners? They're trying to limit the – I thought they were trying to facilitate the production of records so homeowners can make sure that their condo is operating properly. Well, no, because if they were to do that, then they wouldn't have a proper purpose requirement and ten years' worth of books and records in the state act. The state is saying, we'll give you – if it doesn't deal with financial things and a few other issues, but I mean here we're focusing on financial issues. If you want meeting minutes, send us a letter. We'll give you the meeting minutes. If you want insurance information, that's fine. But what they're saying is with respect to financial books and records, you've got to tell us why you need those. And it's only limited to ten years. So the state is putting a restriction on a unit owner's right to get records. So that's – Going back to our Oak Brook case, which you seem to rely on, one of the things they raise is, does this ordinance impose a judicial duty on the court or impact the procedures the court must follow? This ordinance does not. I agree that it doesn't. It impacts the relationship between a condo and a unit owner. So that's another one of the three steps in the three-part test. And then Justice Tillman here asked you about, did not limit specifically or preempt, and you indicated it did not. So the only issue left under the three-part test is the relationship between the ordinance and the state. And then the question is, where do you go from there, since your own case doesn't necessarily follow your own argument of limited, less restrictive? Well, I think that is – that factor is really the heart of it, strikes at the heart of it. But all the cases, say, and the Illinois Supreme Court decisions, every one of them that they've cited here in Skadron, were approved home rule authority if it acts more restrictively. And in every case the city of Chicago cited is the same exact holding, the same holding. If it's more restrictive, it's okay. So if the city said, okay, the state act says that you have to provide a proper purpose, and the city ordinance said, okay, if you have to provide a proper purpose, plus you have to list the documents, for example, that you want, that's more restrictive, and that would pass judicial muster from our position. But in this case, where it's more liberal than the state, and basically it eviscerates the state statute and it eviscerates the not-for-profit act. I don't think that there could be any dispute with respect to that as it relates to production of financial records. Well, isn't that analysis inconsistent with the constitutional provision that says that powers and functions of home rule units should be construed liberally? Well, they have to be construed liberally to a point, but, again, they have to be in conjunction with the state statute. They have to be concurrent is the exact term that the Constitution uses. Are you going to address the other issue dealing with attorney's fees? Well, I'd like to just briefly address that, and you're talking about it with respect to the preemption issue, because I know my time is somewhat limited here. Well, we want to hear about it. I'd like to hear about that. Well, since that seems to be the gist of Mr. Palm's issue. Right. Here's what happened here, and, again, these facts are undisputed. Mr. Palm agreed to pay his lawyer $200 per hour. He wins on this issue with respect to summary judgment, and so he files a fee petition to get interim fees. He supports his interim fee petition with an affidavit that says reasonable fees are $300 an hour. He admits that he paid $200 an hour, but then he goes on and says, well, but reasonable fees are $300 an hour. So the trial court enters an order on the fees at $300 per hour, which obviously we objected to and jumped up and down and screamed about. But you do indicate that of the two, the lesser you were not as offended by. The $200 we were not offended by because that's what he paid. But Judge Hall then, and I'm not sure, Justice next to me says that this was not necessarily preserved on appeal, but I'm going to ask anyway. It appears to me that Judge Hall took the greater fee, the greater number of hours in the greater dollar amount and came up with a number that was neither your number nor Mr. Palm's number. Well, what she did, on the hours we stipulated that it ran for a certain period of time. So based on that stipulation then, she took those hours and multiplied it by $300 an hour. And here's really the rub is that is, first of all, Mr. Palm, as they admit in their briefs, Mr. Palm is a lawyer. He's a law professor at the University of Chicago Law School. He enters into a contract with his lawyer to pay the lawyer $200 an hour. They never in any pleading say that that's unreasonable. In fact, in their interim fee petition, which was filed two years after the work was performed, the lawyer says that her normal hourly rate is around $225 to $250. Of course, this is 10 years ago. So in this case, if you award fees at a 50% higher margin than he's paid, that's essentially punitive damages against my client. That's a windfall for Mr. Palm. And that's, you know, first of all, that's contradicted by the Illinois Code of Professional Responsibility, which says that a lawyer's fee has to be reasonable. So if the lawyer charged the client that fee, it's presumed to be reasonable. And this is not an unsophisticated parties. Again, Mr. Palm is a lawyer. He's a law professor at the University of Chicago. Well, couldn't his lawyer agree to work at a less than market value for purposes of the litigation? Is there anything unreasonable about that? She reduced her rate to $200, and that was not the market value, as Judge Hall found? Well, two things I think are wrong with that. First of all, the question is, if you look at the case law, it says how you arrive at fees is you take the standard hourly rate that the lawyer charges, and then you multiply that by the hours. Now, in this case, he agreed to pay her $200 an hour. Their fee petition says two years later her rate's $225 an hour. She never claims anywhere that $200 an hour is unreasonable. Was the reasonableness of the fee award ever litigated before, Judge Hall? Absolutely. Absolutely. It's in the – the procedure she adopted was pursuant to – took the Northern District of Illinois rules, Local Rule 54.3. We submitted our fees. They submitted their fees. We briefed the issue of the reasonableness of the $300 per hour. We briefed it a lot. We argued it a lot. It was absolutely litigated in the trial court. And, you know, the cases that they cite for Judge Hall's disregarding what the agreement was to pay the fees, all those cases were contingent fee cases where the lawyer was not charging an hourly rate, and then the question was, what does the trial court do to arrive at an hourly rate? And in that case, they used experts. In the one case that the judge cited, Berrios, they came to a fee of $210 per hour based on expert witnesses because he wasn't charging a fee. He never charged an hourly rate. Would you make the same argument if Mr. Palm had agreed to pay his attorneys $500 an hour? Well, we would have challenged the reasonableness of the $500 per hour. Then how would you base the fee? Well, I'm sorry. If he charged – if the client market rate was $500 an hour and he hired Winston and Strunk, I guess that's the rate. Well, I'm not changing that. I'm saying if Mr. Palm had agreed to pay his current attorneys $500 an hour, would you agree with that? I would be unhappy with it, but I think we're stuck with it. When did the change occur that we go from $200 to $300? They – he always paid $200. But when he submitted his fee petition, he said – You're saying two years later. Two years later, they said that a reasonable fee, they got an affidavit from Judge Gillis, retired Judge Kenneth Gillis, and he said, well, a reasonable fee is $300 an hour. But he never paid $300. The lawyer never said she ever charged any client $300 per hour. There's nothing in this record on appeal where that lawyer ever charged anybody $300 per hour at all. It's just clearly unreasonable. I'd kind of like to reserve my time. I might be over, but I wanted to make that point very clear because that's – what seems a disingenuous way to go about trying to get a higher fee agreement, a fee rate. And also, in the statute, it says if you're going to collect a fee because you win, you get his reasonable fee. It doesn't say a reasonable fee. It says a successful plaintiff gets his reasonable fee. His reasonable fee is $200 per hour. It doesn't say some reasonable fee in the marketplace. Does reasonableness depend solely on how much he actually paid? I think that's – I think in this case it does because you have sophisticated parties here. This is not like a situation where you have a very unsophisticated party and they're championing a clause in front of – that maybe would be the – where there's no fee agreement or, you know, they have to come in and prove a reasonable fee. So you're saying if he paid $1,000 an hour, that would be okay too? Well, no. You know, I would challenge that with experts. In this case, I didn't challenge it with an expert, quite frankly. But I would challenge $1,000 an hour. So when it comes to reasonableness, there is a factor other than what was actually paid? In this case, I think that if it was $1,000 per hour, all I can say is I would challenge it because I don't think that's reasonable. The question here is can you go above the hourly rate and basically penalize my client, which I think is akin to giving him a windfall and entering punitive damages against my client. Well, to flip the coin, should your client be entitled to take benefit of a bargain that Mr. Palm worked out with his lawyer? Well, it's his bargain. It's his bargain. We should be entitled to pay, we should be required to pay his reasonable fees. And if his reasonable fees were $200 an hour, they're $200 an hour. There's no agreement at all in this case. There's nothing in the record on appeal that said it was contingent upon if he got a successful judgment, then it would increase to $400 an hour. It's just $200 an hour. That's all it is. Judge Hall determined that his reasonable fee was $300, and aren't we bound by the abuse of discretion standard on review? Well, I think it clearly exceeds her discretion. Pardon me? I think that her decision is wrong no matter how you look at it. It's clearly an abuse of discretion. I think it's contrary to every case cited in this litigation. Another question. So you did not file a counteraffidavit challenging the Gillis' number? We challenged it. That's correct, because we challenged it on the basis that he wasn't entitled to it because under the case law they're entitled to the hourly rate that they're charging. What cases are you basing your decision on? I mean, I see LaHood and I see First Note Bank of Decatur, which is pretty definitive in support of you. Right. I mean, First National Bank is right on point. It says that to allow any greater fee award in this case where the plaintiff and the plaintiff's counsel agreed upon this fee would be to sanction an unjustifiable windfall for the plaintiff. I cite to you the cases that plaintiff cites in his brief, Page v. City of Chicago. Page found in that case the exact holding was a petition that presents competent evidence of an attorney's actual hours and a standard fee provides a reasonable basis for an award of attorney's fees by the trier of fact. Collins v. Hearst, the case that's cited by Mr. Pound, again, the same thing. In that case it was a contingent fee agreement where there was no agreement as to the hourly rate that would be charged. So, of course, in that case if you have to award fees, then you have to go to an expert and say, okay, the reasonable rate is X. Based upon what? Based upon what the attorney normally charges his clients, first of all. That would be the initial starting point for it. And here we know that clearly it's never been $300 an hour at all. In fact, the rate that they stated two years later was $225 an hour. But you do say that, Judge Hall, that you guys stipulated as to the hours. We stipulated as to the time frame. That's correct. The hours are not in dispute. It's the rate. No, I just because I didn't see that anywhere. Oh, I'm sorry. Yes, we did. We stipulated to the hours. Correct. I hope I have a little time left. No, you do. You're fine. Okay. I told you I'd keep him on this one. Thank you. And you're Jeanne Hall. Jeanne Evans. Evans, and you didn't write the briefs. I did. I wrote the brief on appeal. Because I just see Solomon and Asper listed. I was a temporary pro bono attorney for the city at the time. And so I didn't put my name on. No, I just, you know, we like to know who it was that did it. Because sometimes you'll come across something that's not in the briefs. And recently a state's attorney said they just didn't put this in there. And we were happy she pointed it out to us because we were ready to go the other way. Yeah, no, I researched it, wrote the brief, so hopefully we'll be prepared for your questions. The city has a strong interest in addressing housing concerns within its borders. And to that end enacted the condominium ordinance, which authorizes condominium owners to access information, documents about their association's management and financial affairs. The ordinance further provides for attorney fees as an enforcement mechanism. The city of Chicago has intervened to argue that its ordinance is. When did you, did you intervene on the motion to reconsider? Yes. Because it's unusual. There were two motions to reconsider. Usually you don't get a second chance. Yeah, I think in this case the, it was, the law is so clear about home rule that the home rule ordinances can conflict with state statutes on the same subject that the judge felt it needed to address this, that the prior decision. So it was briefed that they had had a prior motion to reconsider and judge hall felt it was appropriate in this case to accept it as an interlock interlocutory order. It could be appealed at any time. So it was a proper decision. So I want to explain why both the substantive provision for inspection of documents and the attorney fee provision are both within the city's home rule authority on matters pertaining to local government and affairs. It is well settled that home rule units have the same power as the state to regulate for the public welfare. The only way this authority can be limited is for the general assembly to enact a statute with specific language preempting. It has to have specific words saying that it's preempting home rule authority on that subject. Now we get the dilemma here. He's turning it around and playing the game that it's less restrictive. And now most of all our case law says the issue is when it's more restrictive. So how do we address this less restrictive? Yeah, I'd love to address that. So the language in the Constitution does not use a less restrictive, more restrictive. And the holdings from the Supreme Court, one after the other, say that the test is whether there's, just like the Constitution says, the test is whether there's specific language preempting home rule authority. And nowhere does it say the test, under all the Supreme Court authority, nowhere does it say the test is conflict. It says it's whether the general assembly specifically preempts home rule authority with those words. Even saying we limit municipal authority is not enough, according to, it's either in Skagen or Roman. It has to specifically say that it preempts home rule authority. And so, as you stated, Lakeshore argues that instead of this, the test is whether or not the ordinance and the statute have a conflict. But really, I mean, it's just black letter law. The Illinois Supreme Court has held time and time again. So it's not just Skagen, it's Roman, Evanston, Peters, Sklodemos, Bolingbroke, American health care providers, all of them say the test is exactly what it says in the Constitution, that home rule units have this power unless they're specifically preempted by words in the statute limiting home rule authority. And nowhere does it say the test is conflict. And, in fact, most all these cases had a conflict. Contrary to what counsel for 2800 Lakeshore argued, there was a direct conflict in Skagen. And in that case, you can argue that, as the state statute said, advertising signs can be up to 1200 square feet, so that an ordinance says up to 480 square feet is within that. But whether something's more or less restrictive depends on which party you're talking about. So I think that would be a very poor test. It isn't the test, but if it was, it would be a very poor test. In fact, in that very case, the state statute specifically stated we value businesses. Outdoor advertising is a legitimate use of private property. It encourages business and markets and the economy. And so we will not allow anything more restrictive than this 1200 square feet. Like the statute says, you cannot regulate this more restrictively. And the ordinance specifically says that they have to be limited to 480 square feet. So that's a direct conflict. It's not that it's within this grant of power. It was a direct conflict, and the court upheld it as a proper use of home rule authority. In Evanston, the case, it's a landlord-tenant ordinance that's different from the state statute. And the court outlines about five, six, seven differences. And I wouldn't say that they ever- They said it was more restrictive. Yeah. They don't use language of more restrictive or less restrictive. They just kind of say different. Some of the examples were under the state statute, the landlord didn't have to mitigate damages, and that ordinance he does. There were different periods that you have to provide notice to your tenant and, one, in the state statute, you didn't have to have a material breach in the ordinance you did. So there were all these differences that are listed, including attorney fees, and the court upheld the local ordinance saying that it most certainly can conflict and it trumps the state ordinance on the same subject. So the Oak Brook Tariffs case, which is the only case that uses that rule about the test as whether it conflicts, it just cannot be squared with all these Supreme Court cases that we've cited. Well, I'm not so sure that the three tests end up- I can go through those three tests and say that this ordinance complies. The three tests at Oak Brook? That's why I was asking, counsel, if in light of his citing that case, although he nails us on the validity of a home rule ordinance, but if you take the meat of what was in that case, it addresses the relationship of the ordinance and the statute and what the legislative intent was, which is the true basis to make it either a valid home rule or invalid. So I guess I'm saying I'm not so sure that's a good case for him. And I would even say, as it's an appellate court case, and we have just this string of Supreme Court cases to the contrary, I wouldn't put so much stock even in the test the way they've outlined it, because in the Supreme Court cases, the test is outlined as a two-part test. One, does it pertain to the local government and affairs of the home rule unit? And two, has it been specifically preempted by those specific words under the Constitution? And that would be, I think, the proper test to look at. And so, to me, it's just an aberrant opinion from an appellate court that can't be squared with, we've cited seven, and even the Shiller, seven Supreme Court cases and the Shillerston case. He also cites the Shillerston case and misreads it. In that case, the court indeed did find that there was no conflict between the statute and the ordinance, but that is not the reason they upheld the ordinance. It was quite plain from the reading of the case that if they had found a conflict, it was the ordinance that would have trumped. I mean, the way it was written, it was very much that the ordinance would have trumped, but they found there was no conflict. In the ordinance, it said you were applying for permission to subdivide a lot, and the city had 60 days to approve it or not approve it, but then there was no remedy if they didn't act on it. The state statute provided a remedy. The court said, well, they're not inconsistent. We'll just use them together and fill in the gaps, which I would say is similar in our case where Lakeshore argues the statute says you can get records up to 10 years. The ordinance doesn't specify, so they argue that we're wanting documents added to an item. I would say just the way they did in the Shillerston, where there's a blank, you fill in the gap with the statute. The statute provides that associations keep records for 10 years. That's what we're asking for. We're asking for the records that they keep. There's nowhere that we're asking for more than that. And even if his test, which I definitely argue that it's not, or the city submits that the less restrictive, more restrictive for conflict is not the test, but even if it were, our case would fit that. And under Skadron, saying that 480 square feet is more restrictive than 1,200 square feet, we're saying you have only three days instead of 30 days. It's more restrictive. It's the same kind of thing, but I think that's not so relevant. As for the attorney fee provision, 2800 waived this argument by not raising it below. In response to our waiver argument, the reply brief cites arguments below where they argued that the inspection of document provision exceeded home rule authority, but nowhere in the record can they find anywhere where they argued the attorney fee provision exceeded home rule authority. This argument appeared for the first time in the opening brief on this appeal, and thus is waived. If the court chooses to consider the argument, the attorney fee provision is valid for the very same reason that the inspection of documents provision is within the city's home rule authority. 2800 argues that the American rule, under the American rule, successful litigants don't get their fees unless there's a statute or agreement of the parties, and here we have an ordinance. We have an ordinance authorizing attorney fees, so we fit this exception. 2800 cites another appellate court case, Naperville, for the argument that state statutes may provide for attorney fees, but ordinances may not. This directly conflicts with Skadden and all the other Supreme Court cases that say home rule ordinances rise to the level of state statutes. If the state can do it, the city can do it, the home rule city. And we cite many statutes and cases upholding state statutes that authorize attorney fees, and because the state can do it, the city can do it. And there are numerous cases also cited where home rule ordinances authorize attorney fees and the courts routinely uphold those attorney fees. The one barren opinion of the appellate court Naperville, this court in Glenview, which 2800 itself cites, in Glenview the court expressly rejects Naperville and says that it cannot stand after Roman, because Roman very clearly says that ordinances are at the same level of the statute, and so if the statute can authorize it, so can the ordinance. The Glenview case also points out the difference between the general fee shifting provision that happened in that case with our very specific attorney fee provision, which is in the limited context of a consumer enforcing his rights. And then City of Evanston directly addresses, in that case there was an attorney fee provision in an ordinance that conflicted with a state statute, and the court upheld that attorney fee provision and stated that the fact that the ordinance provided for remedies did not create any constitutional problems. Well, for these reasons we respectfully request that the court, well, you know, before that I just want to see if there are any of his arguments that I didn't address. That you missed. The only other thing I can think of is the, well, yeah, we urge the court to affirm the judgment of the circuit court. Thank you. Thank you. Thank you. So you're going to argue your own case? You're with the Corporation Counsel's Office? Right. No, her? Yeah. Oh, okay. I was wondering, I thought she was with you. No. The main argument I will present will be about the interim attorney's fee award, and I'm pleased that finally 2800 has agreed that the standard of review is abuse of discretion and not de novo, as they had claimed in their brief. I want to raise several overriding, overarching points. This is an interlocutory appeal of an interim attorney's fee award. It is not the final attorney's fee award. When the case is finally completed before Judge Hall, we're in fact waiting for a ruling after the trial, then there will be a total award of attorney's fees, which may be greater or less and may use rates that are greater than less and certainly will have more in different hourly hours that are being calculated. It's only about, and it's not all the fees for actually obtaining the records and the contempt proceedings that went on below. Now, as an interlocutory appeal, the case is limited to what the orders that are on review, and so it's an interim order, and I suggest it should be even given greater deference since it's not the conclusive order and there will be an adjustment if the court concludes I received too much fees, then I'll have to pay back the 2800, whatever the excess is. Now, furthermore, I think this is a case where we can see some of the actual results of the city ordinance in practice. Based upon the documents that were finally provided three years after I filed suit, Judge Hall entered five declaratory judgments that the activities and the policies of 2800 violated Illinois law, and she entered ten injunctions implementing those declaratory judgments. Now, the hourly rate that is being challenged is $300 an hour in early 2000s. Now, you're right. Those of you that said that I got a special deal from Frank Steinberg because she was doing it pro bono in a way and looking to the ultimate award of the court, and indeed she says that in her affidavit. Now, the next point is that it's a fee-shifting case, not where attorneys' fees are set in the agreement between the parties or set in a common fund. This is a fee-shifting provision. What do you mean by that? Well, the government has decided that in order to enforce the ordinance, that the prevailing party should receive the fees to encourage others to take the action, to make certain that the defendants are deterred. So if there's a windfall, they won't do this, and others like them, other condominiums, will not, which, of course, will lead to the whole point of the production is not just to see the documents, but to get to whether they're properly managed. And in this case, we still have many matters that went to seven-day trial after the summary judgment because she said there were factual disputes that had to be resolved by the trial. Now, counsel says that you never specified a specific thing that is required under the ordinance. Now, I'm not bringing across what I want to say. In other words, you didn't come up with what the ordinance says, saying they did a specific thing right or wrong. I didn't mean to get you off your attorney's shoes. I'm not sure I understand your question, but he did mention about the proper purpose, and I think you brought up that we did have proper purposes set forth with respect to every request we made. Now, Judge Hall, in her summary judgment said, well, I'm not going to reach that because I don't think we have to have a proper purpose. Okay. So you're saying that's what Hall – that was, I guess, what I was trying to get to because he was indicating that Judge Hall ruled against you on that. No. She ruled for me. She didn't reach the alternative ground, which I argued and which, as an appellee here, I can argue, that we had stated sufficient proper purposes if a proper purpose was required. So she just went off on the first alternative, which was the state statute says proper purpose in several places. Well, the city ordinance doesn't say anything of the sort. And so that's how she concluded that, and I think that was not an abuse of discretion. So the fee shifting is meant to deter conduct. It is meant to attract other litigants and their lawyers to enter as private attorney generals. And this is particularly important right now because the city of Chicago is going through a crisis financially and is cutting back in many areas. So enforcement of this ordinance will have to rely more and more on private litigants acting as private attorney generals. The next point is that they, as Mr. Roth pointed out, they had a full opportunity. It was a lengthy proceeding, and they offered no evidence, no counter affidavits, nothing. Disputing Judge Gillis, retired Judge Gillis, is obviously correct testimony that a $300,000 fine and a $300 hourly rate in 2000 to 2003 was not unreasonable and was reasonable to determine the load store. Is your position, Mr. Pound, then that the argument of an unjustifiable windfall relates to 2800 as well? They get to go with the rate of 200 when 300 is the proper market value as Judge Hall determined? Yes. And, in fact, the Illinois courts have recognized that enhancements or multipliers are allowed in attorney's fees cases to make certain that the fee shifting purposes are met. So not only are they getting a windfall, but the courts have said that increasing the amount above what is actually the market. What about First National Bank versus Decatur? Well, that's a collection matter on a promissory note. In the promissory note, there was a term that provided that the debtor had to pay the attorney's fees of the bank. And so that has none of the fee shifting situation. So there the notion that there might be a windfall is because the bank was trying to collect more than it had actually paid. But there was none of the fee shifting public policy implications that justify a greater award as there is in this case. Paul, one other point on the Barclay case, I mean the point, don't have it as a teacher, is that the 2800 was never a party to the attorney's fee agreement between me and Francis Steinberg. They were not in privity in any way. They did not argue that they're a third party beneficiary or that under any other legal principle, they're entitled to benefit from the bargain, if you will. It wasn't a bargain, it was a good public advocacy decision by Mrs. Steinberg. But even if you see it as a benefit of the bargain, they are entitled to it. They are not a third party beneficiary, nor have they argued that below. Now, there's only two more points I want to make. This kind of litigation, and I was on the board for six years, I got elected, and I discovered along with another board member that there were some, what I thought were breaches of management requirements and affiliate arrangements. The board was cut out. That's part of what Judge Hall's addressed already. So I was under fiduciary burden, fiduciary duty, a very, to me as a lawyer, a very high obligation to watch out for the funds and the health and safety of the condominium owners. Now, I think this case, and that's the purpose, I believe, of the ordinance, really, is to make sure that the many high-rise condominiums with hundreds of unit owners have protections from mismanagement. And it's happened. I mean, it's exactly the way the ordinance should work. And that's part of the reason there's fee shifting, and it's justified, is to benefit others than just the plaintiff. And that is exactly what's happened with the orders already entered and with potentially the orders yet to be. You have to remember that it also, I think the ordinance balances the costs and the finances somewhat. The board and the association are all insured under directors and officers' liabilities, so they can run up the cost, whereas I did receive no compensation as a board member. I did this because I thought it was my duty as a fiduciary, and yet it's been a terrible financial burden. And that's the reason I sought the interim fees, was to help me finish the part, you know, trying to get the documents, the contempt proceedings, and things like that. And so I've been going pro se since my resources allocated to this have run out. And the last point I would make is that in the very beginning, when I and the other ex-board members sent our letter requesting documents under the order, they never raised any preemption claim. They said it's on page 15 of my brief, the quote from their letter back their attorney wrote, which was they were complying with the ordinance. Now, their idea of compliance was to give me two pages of an unaudited interim financial statement for one month. But they didn't say it's preempted. They didn't say it's unconstitutional, nothing of the sort. So in conclusion, I ask that you affirm the order's appeal from remand order the trial court to determine fees for the appeal as well, and to release the appeal bond to me and my attorney. What's left with the case in chief there, Mr. Palm? You said there's additional things to be done. Is it just the final award of the fees? Oh, no. The contempt issue? Huh? The contempt issue? That's one of the issues. But Judge Hall, in her summary judgment, gave relief on those things that she found there was no factual dispute. She found there was evidentiary disputes, and we had lengthy discovery. And we went to trial seven days, and we both filed our trial briefs before Judge Hall last Friday. And she's going to issue an opinion or decision in August. It's about financial mismanagement and, again, all the allegations that I make, it's in the third amended complaint. Or I think actually maybe the second amended complaint attached to his brief shows all the various issues we've raised. So you're telling us this case may be back before us again? Well, I hope. I don't bring it back. So there may be injunctive relief in addition to what you have already? Is that it? Yes. Okay. Anything else, Your Honors? No, thank you. Thank you very much. Mr. Roth? I just wanted to respond to just a couple of points. Unfortunately, I think we will be seeing again on this case. The issue about insurance is not in a record on appeal. It's irrelevant. He's not entitled to his fees for the appeal. He's a lawyer proceeding pro se. That's pretty clear. But here's one thing. You had asked, Justice, as to whether he stated a proper purpose. I'm just going to read the order. Now, he has to state a proper purpose under Section 19 of the Condo Act. And the order entered on partial summary judgment, number two, states plaintiff's motion as to Section 19 of the Illinois Condo Act is denied. It was denied because there was questions of fact as to whether he did in fact state a proper purpose. That's contained in my appendix as Exhibit C. And it's on the record on appeal at 1041. So he did not, there was no finding at all that there was a proper purpose. I guess the problem I have with the fees is this. It's uncontradicted that his lawyer never charged $300 an hour. Uncontradicted. Now, you know, I could stand up here, and I'm sure you've had a lot of high-powered lawyers standing in front of you that are charging a heck of a lot more than I am, $500, $600, $700 an hour. Is it reasonable for me, who has never charged $500 to $700 an hour, to say that my time should be worth that when I've never charged anybody that? Never. And that's the exact case we have here. The uncontradicted evidence is she's never charged $300 an hour. And that's why it's unreasonable. Thank you. Thank you very much. Counsel, could I have your name, too, since you're the official corporation counsel? Yes. Oh, okay, you're on there. So you're not, are you with the clerk counsel's office now? Okay. They didn't have that years ago. All right. Well, thank you. I have to say this was, to me, a very interesting kind of fun that you guys argued. Maybe I shouldn't use the word fun, but I found it significant and very well done. So thank you all. Yes, we do wish to compliment all of you. The matter will be taken under advisement and the court will stand at recess.